## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

TIM L. BANKS,

      Petitioner,

   v.                          **CASE NO. 2:05-cv-00697**
                                       **JUDGE SMITH**

JEFFREY WOLFE, Warden,          **MAGISTRATE JUDGE KEMP**

      Respondent.

## REPORT AND RECOMMENDATION

    Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. This matter is before the Court on the instant petition, respondent's return of writ, petitioner's traverse, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

## I. FACTS

The Ohio Tenth District Court of Appeals summarized the facts of this case as follows:

> At trial, Michelle Stone testified that, on the night of April 18, 2002, she went out on a date with Carl Ballow, after recently breaking up with appellant. She stated she and Ballow returned to her apartment and were watching a video in her bedroom when she heard someone entering the apartment and knew it was appellant because she had previously given him a key, which he had not yet returned. She stated that appellant came to her bedroom and saw her with Ballow. Brandishing a handgun, appellant shouted: "You fuckin' bitch, what are you doing? Who is this?" (Tr. at 46-47.) Appellant then approached Stone, who was in the bed, yanked the covers off of her, and punched her in the head. Stone testified at trial:
>
> And then he goes around and pushes my stand where my TV and my phone are, pushes it back, and unplugs my phones and all that, steadily has the gun pointed at me and Carl, telling us that he's going

to shoot both of us. And Carl is like trying to calm him down, telling him that "I don't want her," trying to do everything to--for him to please just put the gun away and at least let him go. I begged Carl not to leave me because I didn't know what he was going to do to me. He did leave. He did let Carl leave. And my son was already awakened. * * *

(Tr. at 47.)

Hearing the noise, Stone's ten-year-old son, Trey, came out of his bedroom and into the hall, where he saw appellant. Appellant let Ballow go. Ballow fled, called 911, and reported the incident to the operator, who dispatched Columbus police to Ballow's location. Ballow then led police to the apartment.

Meanwhile, appellant continued to restrain Stone and Trey in Trey's room. Stone testified:

* * * I asked him would he please let me go into my son's room. And I figured he wouldn't hurt me in front of my son.

He says, "You fuckin' bitch, I didn't tell you to move." I said, "Well, you're going to have to kill me or whatever you want to do, but I have to get in there with my son." I got up out of bed and I went in and I sat with my son. And I was holding my son. He was crying. And I had to use the restroom, and I told him that I had to use the restroom, and I started to get up and he says, "I didn't tell you to move." * * *

(Tr. at 47-48.)

Appellant then permitted Stone to leave Trey's bedroom to go to the bathroom. Stone and Trey then went into the bathroom briefly, and then, as appellant continued to hold a weapon on them and threaten them, they noticed that police had arrived. Stone gave the following account:

A. I said, "just let me tell them that everything is okay, that we had an argument, you're not here anymore," just anything for me to get outside with my son to safety.

Q. Did you tell the defendant he should go someplace?

A. Yes, I told him to go hide in my son's closet, that I will tell the police that you're not here.

* * *

A. * * * And he says, "Trey's going with me," and I said, "no, he's not." And he's pulling my son's arm to take him with him, to keep

2

him with him while I go outside. And I say, "no, he's not. He's coming with me." I finally persuade Tim to go hide.

So I get--I open the front door, and I have my son, and me and my son go down and let the police officers in. I run out to the police officers. They come upstairs.

(Tr. at 49-50.)

Stone testified that, as she stood outside her building telling police what had happened, she heard a slamming noise, and suspected that appellant had exited the rear of the building through her son's bedroom window. Both she and Ballow stated, "there he goes" upon seeing appellant run away from the rear of the building. (Tr. at 51, 185-186.) However, police were unable to apprehend appellant. Police searched the parking lot and found appellant's Chevrolet Corvette, which was parked out of sight of the apartment, although Stone stated on other visits appellant normally parked within sight of her apartment. Police impounded the car.

Appellant remained at large until the next evening, when Stone, in cooperation with police, contacted appellant on his cell phone and arranged a meeting spot at a motel. When appellant drove into the motel parking lot, a police S.W.A.T. team pursued him. Appellant attempted to flee but, after wrecking his vehicle, was chased on foot and apprehended. At the time of his arrest, appellant was carrying a loaded handgun.

A grand jury indicted appellant on two counts of kidnapping, two counts of abduction, one with a firearm specification, and one count of aggravated burglary. Appellant pled not guilty.

At trial, the state presented testimony by Stone, her son, the 911 operator, and several members of the Columbus Police Department involved in the investigation and arrest. The state was unable to locate Ballow, but the trial court, over appellant's objection, permitted the state to introduce the tape of Ballow's 911 call. Through other witnesses, the state also introduced Ballow's statement of "there he goes" upon seeing someone running from the rear of the apartment building.

The jury found appellant not guilty of the kidnapping and burglary counts, but guilty of both abduction counts. The trial court then sentenced appellant to a total of six years imprisonment: three years

3

each on the abduction counts, to be served concurrently; and three years actual incarceration for the firearm specification, to be served consecutively.

Exhibit 5 to Return of Writ. Represented by new counsel, petitioner filed a timely appeal. He raised the following assignments of error:

I. The trial court committed plain error in allowing the prosecuting attorney to introduce hearsay testimony through state witnesses, thereby depriving Appellant of his Right of Confrontation as guaranteed by the Sixth Amendment to the United States Constitution and comparable provisions of the Ohio Constitution.

II. The trial court erred and thereby deprived Appellant of due process of law as guaranteed by the comparable provisions of the Ohio Constitution by overruling Appellant's Crim.R. 29 Motion for Acquittal under the Fourteenth Amendment to the United States Constitution and comparable provisions of the Ohio Constitution by finding Appellant guilty, as the verdict for the charge of abduction was against the manifest weight of the evidence.

III. The trial court committed plain error by preventing defense counsel from using Evidence Rule 404 and 405 to impeach a witness, thereby depriving Appellant of his right to a fair trial as guaranteed by the United States and Ohio Constitutions.

IV. The failures of Appellant's trial counsel constituted ineffective assistance, thereby depriving Appellant of his rights as guaranteed by the Sixth Amendment to the United States Constitution and comparable provisions of the Ohio Constitution.

*See id.*; Exhibit 3 to Return of Writ. On December 7, 2004, the appellate court affirmed the judgment of the trial court. Exhibit 5 to Return of Writ. Proceeding *pro se*, petitioner filed a timely appeal of the appellate court's decision to the Ohio Supreme Court. He asserted the following propositions of law:

1. Whether the Equal Protection and Due Process Clause of the Fourteenth Amendment to the United States Constitution is violated

4

when an indigent defendant is denied effective assistance of counsel on his first appeal as a right.

2.  Whether the Confrontation Clause of the Sixth Amendment to the United States Constitution is violated when testimonial hearsay of a non-testifying (unavailable) victim is admitted into evidence.

3.  Whether the Due Process Clause of the Fourteenth Amendment to the United States Constitution is violated when the State of Ohio fails to prove each element of the crime of abduction.

4.  Whether the Fifth Amendment Due Process right to a fair trial and right to present a defense, along with the Sixth Amendment right to confrontation of the United States Constitution is violated when the trial court improperly truncates the cross-examination of the main prosecution witness.

5.  Whether defendant was denied effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution when counsel failed to point out inconsistencies in the testimony of prosecution witnesses, and delivered a closing argument which was detrimental to the defendant.

Exhibit 6 to Return of Writ.  Through counsel, petitioner raised the following propositions of law:

1.  A trial court violates Evid.R. 802 and deprives an accused of the right to confrontation of witnesses guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution by permitting the prosecution to introduce unsworn out of court statements in a criminal prosecution.

2.  A trial court deprives an accused of his constitutional rights by depriving him of a fair opportunity to present a defense.

3.  The failure of trial counsel to call a necessary witness may constitute a denial of effective assistance of counsel in violation of the Sixth Amendment rights of the accused.

5

4.   The due process guarantees of the United States and Ohio Constitutions require that criminal convictions be based upon sufficient credible evidence.

Exhibit 7 to Return of Writ.  On April 13, 2005, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question.  Exhibit 10 to Return of Writ.  On February 7, 2005, petitioner filed a *pro se* application to reopen his appeal pursuant to Ohio Appellate Rule 26(B).  Petitioner asserted the following claims:

[1.]  APPELLATE COUNSEL DELIVERED DEFICIENT PERFORMANCE BY FAILING TO PUT FORTH A FIFTH AND FOURTEENTH AMENDMENT DUE PROCESS CLAIM THAT CUMULATIVE EFFECTS OF PROSECUTORIAL MISCONDUCT VIOLATED DEFENDANT'S RIGHT TO A FAIR TRIAL.

[2.]  APPELLATE COUNSEL DELIVERED DEFICIENT PERFORMANCE BY FAILING TO PUT FORTH A FIFTH AND [FOURTEENTH] AMENDMENT DUE PROCESS CLAIM THAT THE PROSECUTION FAILED TO TURN OVER EXCULPATORY EVIDENCE.

[3.]  APPELLATE COUNSEL DELIVERED DEFICIENT PERFORMANCE BY FAILING TO PUT FORTH A FOURTEENTH AMENDMENT DUE PROCESS CLAIM THAT THE TRIAL COURT INTRODUCED A SPECIAL JURY INSTRUCTION THAT RELIEVED THE BURDEN OF PERSUASION BEYOND A REASONABLE DOUBT ON THE CRIMES ESSENTIAL CHARGE.

[4.]  APPELLATE COUNSEL DELIVERED DEFICIENT PERFORMANCE BY FAILING TO PUT FORTH A FOURTEENTH AMENDMENT DUE PROCESS CLAIM THAT THE TRIAL COURT WAS BIASE[D] OR PREJUDICE[D].

[5.]  APPELLATE COUNSEL DELIVERED DEFICIENT PERFORMANCE BY FAILING TO PUT FORTH A SIXTH AMENDMENT CLAIM OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL FOR NOT POINTING OUT INCONSISTENCIES IN THE TESTIMONY OF PROSECUTION

6

WITNESSES, AND FOR DELIVERING A CLOSING ARGUMENT WHICH WAS DETRIMENTAL TO THE DEFENDANT.

[6.] THE ABOVE ERRORS, WHEN TAKEN TOGETHER DEPRIVED THE DEFENDANT, TIM L. BANKS, OF A FAIR TRIAL AS GUARANTEED UNDER THE OHIO AND UNITED STATES CONSTITUTIONS' DUE PROCESS CLAUSES.

[7.] APPELLATE COUNSEL DELIVERED DEFICIENT PERFORMANCE BY FAILING TO PUT FORTH A CLAIM THAT THE TRIAL COURT ERRED IN SENTENCING THE APPELLANT TO MORE THAN THE MINIMUM PRISON SENTENCE WHEN HE HAD NOT PREVIOUSLY SERVED A PRISON SENTENCE.

[8.] APPELLATE COUNSEL DELIVERED DEFICIENT PERFORMANCE BY FAILING TO PUT FORTH A CLAIM THAT THE TRIAL COURT [ERRED] WHEN IT SENTENCED APPELLANT TO IMPRISONMENT FOR A COMMUNITY CONTROL VIOLATION WHEN THE COURT DID NOT NOTIFY THE OFFENDER OF THE SPECIFIC PRISON TERM AT THE ORIGINAL SENTENCING HEARING.

*See* Exhibits 11and 15 to Return of Writ. On April 26, 2005, the appellate court denied petitioner's 26(B) application. Exhibit 15 to Return of Writ. Petitioner filed a timely appeal of the appellate court's decision in which he asserted the same claims. Exhibit 16 to Return of Writ. On June 29, 2005, the Ohio Supreme Court dismissed the appeal as not involving any substantial constitutional question. Exhibit 18 to Return of Writ.

Meanwhile, on October 4, 2004, petitioner filed a *pro se* petition for post conviction relief with the state trial court. He asserted that he was denied the effective assistance of counsel because

his trial attorney failed to investigate and present evidence supporting the fact that Mr. Banks did not abduct either Michelle Stone or Carl Ballow, and that he did not have a firearm in his possession at the time of incident. This evidence is contained in the interview

7

conducted by Columbus Police Detective David McKee of Trey Drew-Horton, as set forth in the written report summarizing the interview....

Exhibit 19 to Return of Writ.  On April 29, 2005, petitioner filed an amended post conviction petition with the state trial court in which he asserted:

> 1.  The State adduced false testimony from Trey Drew-Horton regarding the information he told Detective McKee on the early morning hours following the alleged incident.

> 2. The State adduced false testimony from Michelle Stone regarding her denial that she wrote the two-page letter....

> 3. The State adduced false testimony from Sergeant Jeff A. Mathias who falsely testified that he observed Mr. Banks running from the scene where he was apprehended in the parking lot of Scarborough Square on the evening of April 19, 2002.

> 4.  The prosecutor violated *Brady v. Maryland*, 373 U.S. 83 (1963).

> 5.  Ineffective assistance of trial counsel.

Apparently, such action is still pending in the state trial court.  *Return of Writ*, at 8.

On July 18, 2005, petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254.  He alleges that he is in the custody of the respondent in violation of the Constitution of the United States based upon the following grounds:

> 1.  Petitioner was denied the right to confrontation as guaranteed by the Sixth and Fourteenth Amendment to the United States Constitution when testimonial hearsay is admitted through state witnesses.

> 2.  Petitioner was denied due process as guaranteed by the Fifth and

8

Fourteenth Amendments to the United States Constitution because the State of Ohio failed to prove each and every element for the crime of abduction.

3. Petitioner was denied the Fifth Amendment right to a fair trial, and right to present a defense, along with the Sixth Amendment right to confrontation as guaranteed by the United States Constitution when the trial court improperly truncated the cross examination of the main prosecution witness.

4. Petitioner was denied the effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution for failure to call a necessary witness.

5. Petitioner was denied equal protection and due process as guaranteed by the Fourteenth Amendment to the United States Constitution when he was denied counsel on his first appeal as a [sic] right.

6. Petitioner was denied a fair trial as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution because of the cumulative effects of prosecutorial misconduct.

7. Petitioner was denied due process as guaranteed by the Fifth and Fourteenth Amendment to the United States Constitution because the State of Ohio failed to turn over exculpatory evidence.

8. Petitioner was denied due process as guaranteed by the Fourteenth Amendment to the United States Constitution when the trial court delivered a special jury instruction that was incomplete, relieving the burden of persuasion beyond a reasonable doubt on the crime's essential charge.

9. Petitioner was denied due process as guaranteed by the Fourteenth Amendment to the United States Constitution because the trial court was biased or prejudiced.

10. Petitioner was denied the effective assistance of counsel as

9

guaranteed by the Sixth Amendment to the United States Constitution
when trial counsel failed to point out inconsistencies in the testimony
of prosecution witnesses during cross examination and ...deliver[ed]
a closing argument which was detrimental to the petitioner.

11.  The cumulative effect of the above errors deprived petitioner,
Tim L. Banks, of a fair trial as guaranteed by the Ohio and United
States Constitution's due process clauses.

12.  Petitioner was denied the rights of a trial by jury and due process
guaranteed by the Ohio and United States Constitution when the trial
court erred by imposing a term greater than the minimum sentence
for a person with no history of imprisonment based on facts not found
by a jury or admitted by petitioner.

On September 14, 2005, the Court granted petitioner's request to amend the petition to delete claims

thirteen and fourteen.  Doc. No. 8.  On March 9, 2006, respondent's motion to stay proceedings was

denied.  Doc. No. 13.  On March 29, 2006, respondent filed a return of writ.  Respondent now

contends that claims three, six, and eight through twelve are procedurally defaulted, and that the

remainder of petitioner's claims are without merit.

## II.  FAIR PRESENTMENT

In order to exhaust available state remedies, a petitioner must first fairly present the

substance of his federal habeas corpus claims to the state courts.  *Picard v. Connor*, 404 U.S. 270,

275 (1971); *Anderson v.Harless,* 459 U.S. 4, 6 (1982).  "The state courts must be provided with a

fair opportunity to apply controlling legal principles to the facts bearing upon petitioner's

constitutional claims."  *Sampson v. Love,* 782 F.2d 53, 55 (6th Cir. 1986).  Petitioner does not fairly

present his claim simply because the necessary facts supporting a federal constitutional claim are

present or because the constitutional claim appears self evident.  *Haggins v. Warden*, 715 F.2d 1050,

1054 (6th Cir. 1983)(citing *Harless*, 459 U.S. at 6).  Furthermore, "[a] petitioner 'fairly presents' his claim to the state courts by citing a provision of the Constitution, federal decisions employing constitutional analysis, or state decisions employing constitutional analysis in similar fact patterns." *Levine v. Torvik,* 986 F.2d 1506, 1515 (6th Cir. 1993)(citing *Franklin v. Rose*, 811 F.2s 322, 326 (6th Cir. 1987)).  Courts normally require more than a single broad generalization that petitioner was denied a "fair trial" or "due process of law."  *Franklin*, 811 F.2d at 326; *Petrucelli v. Coombe*, 735 F.2d 684, 688 (6th Cir. 1984).  Petitioner, however, need not "cite book and verse on the federal constitution." *Picard,* 404 U.S. at 277 (quoting *Daugharty v. Gladden*, 257 F.2d 750, 758 (9th Cir. 1960)).  The Sixth Circuit has strictly followed the requirement that petitioner fairly presented his federal constitutional claims to the state courts as a precondition to federal habeas review.  *Weaver v. Foltz*, 888 F.2d 1097, 1098 (6th Cir. 1989).

In claim three, petitioner asserts that he was denied a fair trial, the right to present a defense, and his right to confront witnesses because the trial court "improperly truncated the cross examination of the main prosecution witness." *See Petition*.  Specifically, petitioner contends that the trial court should have permitted him to cross examine the victim, Michelle Stone, regarding criminal complaints she had filed against Ballow and her former husband.  He also complains that the trial court refused to permit him to introduce into evidence a letter she had written to him prior to the alleged incident. *Id*.  On direct appeal, however, petitioner argued solely that the trial court's rulings violated state evidentiary rules as follows:

> The trial court committed plain error by preventing defense counsel from using Evidence Rule 404 and 405 to impeach a witness, thereby depriving appellant of his right to a fair trial as guaranteed by the United States and Ohio Constitutions.

11

Exhibit 3 to Return of Writ.  Further, petitioner never raised any issue regarding the trial court's

refusal to permit introduction of Stone's letter.  Additionally, petitioner failed to cite a single case

in support of this claim raising the federal constitutional issues he now presents here.  He argued the

claim solely in terms of state evidentiary rules.  *See id.*  The state appellate court likewise addressed

the claim in terms of the alleged violation of state evidentiary rules only:

> Appellant's third assignment of error alleges the trial court should
> have permitted appellant to introduce character evidence regarding
> Stone in order to impeach her testimony pursuant to Evid.R. 404 and
> 405. [FN1] As we have already indicated, the defense sought to
> introduce its theory that, because Stone's previous relationships with
> men had ended with the involvement of law enforcement officers,
> Stone had fabricated the incident involving appellant with the goal of
> procuring appellant's arrest. The trial court refused to permit the
> defense to introduce evidence of Stone's previous relationships for
> several reasons: it would unnecessarily draw out the trial with
> extraneous evidence of past relationships and criminal proceedings
> against other defendants; the introduction of such evidence would
> shift the focus of the trial from appellant's conduct to Stone's; and,
> even if Stone had repeatedly engaged in relationships ending in the
> arrest of her male friends, this did not necessarily mean she had lied
> in order to frame appellant for a crime he did not commit. As the trial
> court stated, Stone simply may have a "lousy choice of men." (Tr. at
> 164 .) All of these were valid reasons for excluding this evidence.

> FN1. "Evid R 404 Character evidence not admissible to prove
> conduct; exceptions; other crimes

> "(A) Character evidence generally

> "Evidence of a person's character or a trait of his character is not
> admissible for the purpose of proving that he acted in conformity
> therewith on a particular occasion, subject to the following
> exceptions:

> " * * *

> "(2) Character of victim. Evidence of a pertinent trait of character of
> the victim of the crime offered by an accused, or by the prosecution
> to rebut the same, or evidence of a character trait of peacefulness of

the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor is admissible; however, in prosecutions for rape, gross sexual imposition, and prostitution, the exceptions provided by statute enacted by the General Assembly are applicable.

" * * *

"(B) Other crimes, wrongs or acts

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

"Evid R 405 Methods of proving character

"(A) Reputation or opinion

"In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.

"(B) Specific instances of conduct

"In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct."

In any event, as we have noted, this evidence would have gone to Stone's credibility, which the jury was capable of assessing even without additional evidence regarding Stone's romantic history. The evidence sought to be introduced was extraneous to the issue of whether appellant knowingly restrained the liberty of Stone and Ballow by force or threat of force. Therefore, we overrule appellant's third assignment of error.

Exhibit 5 to Return of Writ. In his subsequent appeal to the Ohio Supreme Court, petitioner argued

that he had been denied the right to confront witnesses and the right to present a defense by the trial court's ruling(s).  He additionally raised an issue regarding the trial court's refusal to permit introduction of Stone's letter.  *See* Exhibits 6 and 7 to Return of Writ.  However, the Ohio Supreme Court will not ordinarily consider a claim of error that was neither raised nor considered by the court of appeals.  *State v. Taylor*, 78 Ohio St.3d 15, 23 (1997), citing *State v. Williams,* 51 Ohio St.2d 112 (1977).  *See also Eskridge v. Konteh*, 88 Fed.Appx. 831, 837-38 unpublished, 2004 WL 232150 (6th Cir. February 3, 2004)(enforcing procedural default under similar circumstances):

> [B]oth claims at issue were first raised on appeal to the Supreme Court of Ohio. The Supreme Court of Ohio dismissed the appeal without explanation. However, a federal court may "look through" an unexplained order to the last reasoned state court judgment and presume that the Ohio Supreme Court's unexplained order rests on the same grounds as the reasoned judgment. *Ylst v. Nunnemaker,* 501 U.S. 797, 802-04, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991); *Couch v. Jabe,* 951 F.2d 94, 96 (6th Cir.1991) (*per curiam*). The last reasoned opinion, that of the Ohio Court of Appeals, did not address the prosecutorial misconduct issue or the Fifth Amendment issue (as neither issue was raised before the court). Where a state supreme court issued an unexplained order dismissing claims that were never addressed in judgments by lower state courts, this Court may invoke an applicable state procedural bar on behalf of the state supreme court. We applied such a bar in *Simpson v. Sparkman,* 94 F.3d 199, 202-03 (6th Cir.1996), where we stated:
>
> Addressing the difficulty of interpreting unexplained state court orders, the Supreme Court has held that "where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim [are presumed to] rest upon the same ground." *Ylst v. Nunnemaker,* 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991). However, because there are no state court decisions rejecting petitioner's due process claim, this presumption is also unavailable.

> ***

14

... [T]here is a mandatory rule that claims not raised before the Ohio Appeals Court are defaulted....[FN4] Invoking this procedural bar, this Court would decline to rule on the merits, on these issues, ... There was no showing of cause and prejudice for the failure to raise these issues before the Ohio Court of Appeals, and thus the procedural bar would provide an independent and adequate state ground for denying relief for the claims....

FN4. *State v. Issa,* 93 Ohio St.3d 49, 62, 752 N.E.2d 904 (Ohio 2001) ("Appellant failed to raise this issue below and thereby waived it. *Williams,* 51 Ohio St.2d 112, 5 Ohio Op.3d 98, 364 N.E.2d 1364, paragraph one of the syllabus."); *State v. Sanders,* 92 Ohio St.3d 245, 262, 750 N.E.2d 90 (Ohio 2001) ("Sanders failed to raise these issues in the court of appeals. He thereby waived them."); *State v. Smith,* 89 Ohio St.3d 323, 327, 731 N.E.2d 645 (Ohio 2000) ("Since Smith failed to raise this issue before the court of appeals, we consider this issue to be waived. *State v. Williams* (1977), 51 Ohio St.2d 112, 5 Ohio Op.3d 98, 364 N.E.2d 1364, paragraph two of the syllabus."); *State v. Jester,* 32 Ohio St.3d 147, 154, 512 N.E.2d 962 (Ohio 1987) ("Appellant failed to raise this issue below to the court of appeals. This court will not ordinarily consider a claim of error which was not raised and was not considered or decided by that court. *Toledo v. Reasonover* (1965), 5 Ohio St.2d 22, 34 O.O.2d 13, 213 N.E.2d 179, paragraph two of the syllabus."

*Id*. (Footnote omitted).

Petitioner has failed to establish cause for his failure to present his federal constitutional issues to the state appellate court. Petitioner, therefore, has waived his right to present the federal constitutional issues presented in claim three for federal habeas corpus review. For the reasons discussed, *infra,* petitioner likewise has procedurally defaulted his claim regarding the trial court's refusal to permit introduction of Stone's letter into evidence.

To the extent that petitioner asserts in claim three the alleged violation of state law, his claim is without merit. Federal habeas review of state court evidentiary rulings is extremely limited. *Waters v. Kassulke,* 916 F.2d 329, 335 (6th Cir. 1990). Evidentiary questions generally do not rise

to a constitutional level unless the error was so prejudicial as to deprive a defendant of a fundamentally fair trial, thereby violating due process. *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *see also Walker v. Engle,* 703 F.2d 959, 962 (6th Cir. 1983), *cert. denied*, 464 U.S. 962 (1983). When such errors are alleged, the federal court's inquiry in reviewing these claims is directed to whether the evidence was rationally connected to the crime charged. *Carter v. Jago*, 637 F.2d 449, 457 (6th Cir. 1980), *cert. denied*, 456 U.S. 980 (1982).

> Generally, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Roe v. Baker*, 316 F.3d 557, 567 (6th Cir.2002) (citing *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir.1994)).

*Biros v. Bagley,* 422 F.3d 379, 391 (6th Cir. 2005). For the reasons discussed by the state appellate court, such are not the circumstances here.

### III. PROCEDURAL DEFAULT

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required fairly to present those claims to the highest court of the state for consideration. 28 U.S.C. §2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present the claims, his petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless*, 459 U.S. 4, 6 (1982) *(per curiam)*; *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). If, because of a procedural default, the petitioner can no longer present his claims to a state court, he has also waived them for purposes of federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error. *Murray v. Carrier*, 447 U.S. 478, 485

(1986); *Engle v. Issac*, 456 U.S. 107, 129 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is precluded by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id.* Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id.* Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. *Id.* Finally, if the Court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner is required to demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Id.* This "cause and prejudice" analysis also applies to failure to raise or preserve issues for review at the appellate level. *Leroy v. Marshall,* 757 F.2d 94 (6th Cir. 1985).

In claim three, petitioner asserts, *inter alia,* that he was denied a fair trial because the trial court refused to permit introduction of Stone's letter into evidence. In claim six, petitioner asserts that he was denied a fair trial due to the cumulative effect of prosecutorial misconduct; in claim eight, petitioner asserts that he was denied a fair trial when the trial court issued a special jury instruction removing the prosecutor's burden of proof of beyond a reasonable doubt; in claim nine, petitioner asserts that he was denied a fair trial because the trial court was biased; in claim ten, petitioner asserts that he was denied the effective assistance of counsel because his trial attorney failed to point out inconsistencies in prosecution witness statements during cross examination, and

17

because his attorney delivered a detrimental closing argument; in claim eleven, petitioner asserts that the cumulative effect of errors denied him a fair trial; in claim twelve, petitioner asserts that his sentence violates *Blakely v. Washington*, *supra*, 524 U.S. at 296. All of these claims are readily apparent from the face of the record, and should have been raised on direct appeal, but were not. Further, petitioner may now no longer raise such claims in the state courts under Ohio's doctrine of *res judicata.* *See State v. Cole*, 2 Ohio St.3d 112 (1982); *State v. Ishmail*, 67 Ohio St.2d 16 (1981); *State v. Perry*, 10 Ohio St.2d 175 (1967). The state courts were never given an opportunity to enforce the procedural rule due to the nature of petitioner's procedural default. This Court deems the first and second parts of the *Maupin* test to have been satisfied.

This Court must also decide whether the procedural rules at issue constitute an adequate and independent bases upon which to foreclose review of petitioner's federal constitutional claims. This task requires the Court to balance the state's interests behind each procedural rule against the federal interest in reviewing federal claims. *See Maupin v. Smith*, 785 F.2d at 138. Under this analysis, the procedural rules barring claims three, six and eight through twelve constitute adequate and independent state grounds for denying relief. The state courts must be given a full and fair opportunity to remedy alleged constitutional defects. The requirement that all available claims be presented at the first opportunity serves the state's interests in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. Further, the doctrine of *res judicata* is stated in unmistakable terms in numerous Ohio decisions and Ohio courts have consistently refused to review claims on the merits under that doctrine. *See State v. Cole*, *supra; State v. Ishmail, supra; State v. Perry, supra*.

Petitioner has waived his right to present claims six and eight through twelve for federal

habeas review.  Petitioner can still secure review of these claims on the merits if he demonstrates cause for his failure to follow the state procedural rules as well as actual prejudice from the constitutional violations that he alleges.

> "'Cause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him [;] ... some objective factor *external* to the defense [that] impeded ... efforts to comply with the State's procedural rule." *Coleman v. Thompson,* 501 U.S. 722, 753, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)

*Maples v. Stegall,* 340 F.3d 433, 438 (6th Cir. 2003)(emphasis in original).  As cause for his procedural default, petitioner asserts the ineffective assistance of appellate counsel.

The ineffective assistance of counsel may constitute cause for a procedural default, so long as such claim has been presented to the state courts and is not itself procedurally defaulted. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000).  Petitioner never raised any claim of ineffective assistance of counsel due to his attorney's failure to raise on appeal an issue regarding the trial court's refusal to permit introduction of Stone's letter in the state courts.  Petitioner has failed to establish cause or prejudice for the procedural default of such claim.  Petitioner likewise has failed to demonstrate either cause for his procedural defaults or actual prejudice resulting from the alleged constitutional violations of claims six and claims eight through eleven.

The state appellate court denied petitioner's claim of ineffective assistance of counsel as follows:

> In *State v. Reed* (1996), 74 Ohio St.3d 534, 660 N.E.2d 456, the Ohio Supreme Court held that the two-prong analysis found in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, is the appropriate standard to assess a defense request for reopening pursuant to App.R. 26(B). Appellant must prove that his counsel was deficient for failing to raise the issues he now presents, as well as showing that, had counsel presented those claims on appeal, there

was a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. As such, appellant bears the burden of establishing that there was a genuine issue as to whether there was a colorable claim of ineffective assistance of counsel on appeal. *See, also*, *State v. Spivey* (1998), 84 Ohio St.3d 24, 701 N.E.2d 696, *certiorari denied* (1999), 526 U.S. 1091, 119 S.Ct. 1506, 143 L.Ed.2d 658.

In his first assignment of error, appellant complains of misconduct by the assistant prosecuting attorney during opening and closing arguments before the jury. In *State v. Apanovitch* (1987), 33 Ohio St.3d 19, 514 N.E.2d 394, the Ohio State Supreme Court noted that the conduct of a prosecuting attorney during a trial cannot be made a ground of error unless that conduct deprives the defendant of a fair trial. Furthermore, the court has refused to treat prosecutorial misconduct as reversible error, "except in rare instances." *State v. DePew* (1988), 38 Ohio St.3d 275, 288, 528 N.E.2d 542.

Appellant references the following inferences made by the prosecuting attorney which appellant argues are not supported by the record: (1) that Carl Ballow was permitted to leave the apartment after about 45 minutes; (2) that Trey saw appellant with a handgun the first time he stepped into the hallway; (3) that Ballow called the police from a pay phone instead of his cell phone; (4) that two officers who responded to Ballow's call would testify at the hearing; (5) that, when appellant was arrested, the police recovered a handgun which had been described by three witnesses; (6) that no one was positive of the exact time the events occurred; (7) that Officer Conley corroborates everything Michelle Stone testified to; (8) that appellant said he should kill both Stone and Ballow; (9) that Trey's testimony can be considered in relation to the abduction of Ballow; (10) that Ballow told the 911 operator that appellant had a gun; and (11) that Trey could not remember if his mom was with him the day before.

Appellant argues that the evidence presented at trial actually establishes the following in relation to each of the above enumerated misstatements of fact: (1) no one testified how long Ballow was kept in the apartment; (2) no one testified that Trey went back to his bedroom after seeing appellant with a gun; (3) Ballow called the police from a cell phone and not a pay phone; (4) only one police officer testified and not two; (5) three witnesses did not testify concerning a firearm; (6) Detective Weeks testified that the incident took place at 11:00 p.m.; (7) Officer Conley's testimony, which was

20

hearsay, was only offered to explain the action of the police and not to corroborate Stone's testimony; (8) Stone testified that appellant said he should shoot both she and Ballow, and not kill them; (9) Trey never testified that appellant did anything to Ballow; (10) Ballow never described a gun on the 911 tape; and (11) Trey testified that he thought his mom stayed at Tim's (appellant's) house the day before. Appellant argues that the above misstatements of fact require reversal because a general instruction to the jury that arguments of counsel are not to be considered evidence is insufficient to correct such errors. This court disagrees.

Upon review of the record, the trial court properly instructed the jury that the opening statements and closing arguments of counsel do not constitute evidence. Both the prosecution and defense counsel have wide latitude during opening and closing arguments. The trial court generally determines the propriety of statements made during open argument. *State v. Loza* (1994), 71 Ohio St.3d 61, 641 N.E.2d 1082. Opening argument is not evidence but is intended to advise the jury of what counsel expects the evidence to show. *State v. Turner* (1993), 91 Ohio App.3d 153, 631 N.E.2d 1117. As such, the prosecutor and defense counsel may, in good faith, make statements as to what they expect the evidence will show. *Id*. The conduct by the prosecutor must have been so extreme so as to deprive the defendant of a fair trial in order for reversible error to be present. *State v. Keenan* (1993), 66 Ohio St.3d 402, 613 N.E.2d 203.

Stone testified that the crime occurred sometime after she went to bed around 10:00 p.m. The first police officer was dispatched at 12:56 a.m. This court finds that the prosecutor's estimate of 45 minutes does not amount to prosecutorial misconduct.

Trey testified that he slept in a different bedroom from his mother, and that he woke up when he heard his mother crying. Trey saw appellant in the hallway and then returned to his bedroom. Although Trey testified that he did not see anything in appellant's hands at that particular time, Trey did testify that he saw appellant with a gun later.

Whether Ballow called the police from his cell phone or a pay phone is immaterial. Further, appellant was not prejudiced by the fact that only one police officer testified at trial. Regarding the firearm, Stone, Ballow, and Trey all testified that appellant had a firearm that night. Upon review of the above statements made by the prosecutor in opening statements, this court specifically finds that those statements do not constitute prosecutorial misconduct and that appellant was not

21

prejudiced.

During closing argument, the prosecutor indicated that no one was positive what time appellant actually entered Stone's bedroom. Stone testified that the events began sometime after 10:00 p.m., when she went to bed, and the first police officer was dispatched at 12:56 a.m. Detective Weeks became involved in the case later and testified that Stone alleged appellant entered her home uninvited around 11:00 p.m. This does not amount to prosecutorial misconduct.

Furthermore, contrary to appellant's assertions, the prosecutor did not improperly vouch for the credibility of the witnesses. Officer Conley was permitted to testify to some of what Stone and Ballow had told him. Pursuant to the rules of evidence, these statements did not constitute hearsay, as they were permissible to explain the subsequent action of the police officers. To the extent that the prosecuting attorney stated that Officer Conley's testimony corroborates the victim's testimony does not amount to improperly vouching for the credibility of the witnesses.

The evidence presented at trial indicates that appellant restrained Stone and Ballow at gunpoint, and both testified that appellant was angry and screaming. Whether appellant actually stated that he should kill Stone and Ballow, or simply shoot them, does not amount to misconduct on the part of the prosecutor. Further, Trey testified that he awoke when he heard his mother crying. That testimony corroborates the fact that Stone was upset that appellant was in her apartment and goes against appellant's assertions that Stone wanted appellant to find her and Ballow together. Both Ballow and Stone testified that Ballow was there when appellant entered the apartment with a gun. Trey's testimony did, to a certain extent, corroborate Ballow's testimony as well. Furthermore, whether Ballow mentioned a gun during the 911 call or not is immaterial. Also, while Trey did testify that he saw appellant and his mother together the day before, Trey was not able to remember where. As such, it was an accurate statement of the evidence to indicate that Trey could not remember if his mother was at Tim's (appellant's) house the day before.

Because none of the arguments appellant asserts in his first assignment of error constitute prosecutorial misconduct, appellant's first assignment of error does not establish a colorable claim of ineffective assistance of counsel.

22

In his second assignment of error, appellant complains that the state failed to provide exculpatory information in violation of Crim.R. 16(B)(1)(g). In the present case, an informational summary was provided to defense counsel at trial. Pursuant to *Brady v. Maryland* (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, the state is required to disclose material evidence to defense counsel. Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. The possibility that certain undisclosed information might have been helpful to the defense or might have affected the outcome of the trial does not satisfy the requirement that the evidence be material.

The record shows that defense counsel characterized the summary as similar to a summary provided to him earlier. Furthermore, appellant has not shown that the evidence was exculpatory or that there was a reasonable probability that the result of the proceeding would have been different had that information been disclosed.

In his third assignment of error, appellant argues that the trial court erred in instructing the jury on "flight" and indicating that such evidence may be considered in determining the guilt or innocence of the defendant because it may demonstrate a consciousness of guilt. Appellant argues that the charge was incomplete and demonstrated that the trial court was biased. However, in *State v. Taylor* (1997), 78 Ohio St.3d 15, 676 N.E.2d 82, the court held that an instruction indicating that flight may be indicative of a consciousness of guilt was neither arbitrary nor unreasonable and did not create an improper mandatory presumption.

In his fourth assignment of error, appellant specifically raises a claim that the trial court was biased against him and that appellate counsel should have raised this claim in the direct appeal. Appellant sets forth nine "examples" of the trial court's bias against him; however, appellant fails to explain how he was prejudiced by these issues even if some of the issues are true. App.R. 26(B) requires that the appellant not only set forth assignments of error but that the appellant indicate the manner in which such deficiency prejudicially affected the outcome of his appeal. Relative to this assignment of error, appellant has failed to explain how he was prejudiced.

In his fifth assignment of error, appellant argues that defense counsel's closing argument was detrimental to him because counsel

failed to point out inconsistencies in the testimony of the prosecution's witnesses. Upon review of the record, this court specifically finds that counsel did point out what he perceived as discrepancies among the witnesses' testimonies.

In his sixth assignment of error, appellant argues that the cumulative effect of the above errors deprived him of a fair trial. However, cumulative error does not apply to cases that are not marked by multiple instances of harmless error. *State v. Garner* (1995), 74 Ohio St.3d 49, 656 N.E.2d 623. Appellant simply has not demonstrated multiple instances of harmless error, the cumulative effect of which deprived him of a fair trial.

In his seventh assignment of error, appellant contends that the trial court erred in sentencing him to more than the minimum prison sentence since he had not previously served a prison sentence. Upon review of the sentencing transcript, this court finds that the trial court justified sentencing appellant to greater than the minimum sentence. Specifically, the court noted that the victim suffered serious psychological harm, a gun was involved, and appellant had committed a similar offense and was previously placed on probation. Furthermore, the court determined that this was a situation that was likely to recur and noted that appellant did not respond favorably to the sanctions previously imposed. The court also noted appellant's history of criminal convictions, which included a 1999 plea bargain to endangering children and criminal mischief involving appellant knowingly causing physical harm to his ex-girlfriend's three-year-old daughter. Furthermore, there was an assault in 2000, resulting from a domestic violence situation involving abduction and assault, and intimidation of a witness. The court did state its findings for imposing greater than the minimum term, and appellant has not shown ineffective assistance of appellate counsel for not raising this issue.

\*\*\*

Based on the foregoing, appellant's assignments of error are not well-taken, and this court finds that appellant has failed to meet his burden to demonstrate that there is a genuine issue as to whether he was deprived the effective assistance of counsel on appeal. As such, appellant's application for reopening is denied.

Exhibit 15 to Return of Writ.

24

The factual findings of the state court are presumed to be correct:

> (1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. §2254(e). Further, the decision of the Ohio Court of Appeals is binding on this Court unless it is contrary to clearly established federal law or was based on an unreasonable determination of the facts of record:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

> A state court's determination is contrary to federal law when the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or on indistinguishable facts. *Williams v. Taylor,* 529 U.S. 362, 412-13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an unreasonable application of federal law when the state court correctly identified the applicable legal principle from Supreme Court precedent, but applied that principle to the facts before it in an unreasonable manner. *Id.* at 413, 120 S.Ct. 1495.

*Maldonado v. Wilson*, 416 F.3d 470, 475 (6th Cir. 2005).  Petitioner has failed to meet this standard here.

The right to counsel guaranteed by the Sixth Amendment is the right to effective assistance of counsel.  *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970).  The standard for reviewing a claim of ineffective assistance of counsel is twofold:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987).  "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  *Strickland*, 466 U.S. at 689.

To establish prejudice, it must be shown that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different.  *Id.,* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id*., at 697.  Because petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of counsel, if the Court determines that petitioner has failed to satisfy one prong, it need not consider the other.  *Strickland,* 466 U.S. at 697.

The *Strickland* test applies to appellate counsel.  *Burger v. Kemp*, 483 U.S. 776 (1987).

26

Defendants appealing their criminal convictions enjoy the same Sixth Amendment right to the effective assistance of counsel on a direct appeal as of right that they have during trial.  While appellate counsel is not expected to raise every non-frivolous issue on direct appeal, counsel is obligated to provide reasonable professional judgment in presenting the appeal.  *Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985).  As with an ineffective assistance of trial counsel claim, a petitioner must demonstrate that counsel's performance was deficient and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *Strickland,* 466 U.S. at 696; *Sims v. Livesay*, 970 F.2d 1575, 1579-81 (6th Cir. 1992).

Petitioner asserts that he was denied the effective assistance of appellate counsel because his attorney failed to raise on appeal an issue regarding the prosecutor's improper references to facts not in evidence, and improper vouching for witnesses.

> It is improper for a prosecutor ... to bring to the attention of the jury any "purported facts that are not in evidence and are prejudicial." *United States v. Wiedyk*, 71 F.3d 602, 610 (6th Cir.1995) (citing *United States v. Leon*, 534 F.2d 667, 679 (6th Cir.1976)). However, prosecutors "must be given leeway to argue reasonable inferences from the evidence." *United States v. Collins*, 78 F.3d 1021, 1040 (6th Cir.1996).

*Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000).  Similarly,

> " '[I]t is improper for a prosecuting attorney in a criminal case to state his personal opinion concerning the credibility of witnesses or the guilt of a defendant.' " *United States v. Krebs*, 788 F.2d 1166, 1176 (6th Cir.1986) (quoting *United States v. Daniels*, 528 F.2d 705, 709 (6th Cir.1976)).

*Id.*, at 537.  However, trial counsel failed to object to any of the alleged instances of prosecutorial misconduct, and such claim therefore would have been reviewed on appeal for plain error only.

27

> Notice of plain error under Crim.R. 52(B) is to be taken with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *State v. Barnes,* 94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240; *State v. Hill,* 92 Ohio St.3d 191, 196, 2001-Ohio-141, 749 N.E.2d 274. Plain error should not be invoked unless it can be said that, but for the error, the outcome of the proceedings would clearly have been otherwise. *See State v. Jackson,* 92 Ohio St.3d 436, 438, 2001-Ohio-1266, 751 N.E.2d 946; *State v. Sanders,* 92 Ohio St.3d 245, 263, 2001-Ohio-189, 750 N.E.2d 90.

*State v. Knott*, unpublished, 2004 WL 2428449 (Ohio App. 4 Dist. October 26, 2004). In any event, and for the reasons discussed by the state appellate court, this Court likewise concludes that none of the statements complained of constituted improper prosecutorial misconduct so as to deprive petitioner of a fair trial.

Petitioner asserts that he was denied the effective assistance of counsel because his attorney failed to raise on appeal an issue regarding judicial bias. Petitioner argues that the trial court exhibited bias by improperly refusing to permit introduction of Stone's letter as improperly authenticated; by issuing jury instructions on flight over the objections of defense counsel;[1] by denying petitioner's request to cross examine the victim regarding prior criminal complaints she had filed, and by stating, outside of the presence of the jury, "[S]he's got a lousy choice of men"; by refusing to permit cross examination of Stone regarding whether Carl Ballow had previously used

---

[1] Petitioner complains of the following jury instruction:

Now, some evidence was admitted at trial of defendant's flight after the alleged crime. Evidence of flight may be considered by you in determining the guilt or innocence of the defendant in that it may demonstrate to you a consciousness of guilt.

*Transcript,* Volume 2, Part 1, at 52. *See Petition*.

crack cocaine; and by permitting re-direct examination of Officer Conley by the prosecutor beyond

the scope of cross-examination as follows:

> [Prosecutor]: Tell the ladies and gentlemen of the jury what that means when you say, "Secured the scene."

> Mr. Cooper [Defense counsel]: Your Honor, I'm going to object. Beyond the scope of cross.

> ***

> Court: ... I'll allow it.  Go ahead.

> Witness: Where a crime possibly occurs in an area, that's usually what we consider the scene of the crime.  Usually if it's contained within an apartment or, you know, an area of [sic] where a sequence of events happens, we usually try to secure it so no evidence or anything is disturbed.

> Q.  Okay.  And you stay there until the scene is cleared?

> A.  That's correct.

> Q.  What do you mean by the scene [is] cleared?

> A.  The detectives will come in and process the scene, pictures, fingerprints, whatever they need to do.

> Q.  Collect evidence?

> A.  Collect evidence.  We hold the scene until they say, Okay, we're done here, we've got everything we need.  Then the scene is cleared.

> ***

[Continuing objection].

*Transcript*, at 271-273.  Additionally, petitioner complains that the trial court exhibited bias by allowing Columbus police officer Charlotte Smith to testify despite the prosecutor's failure to disclose Smith's name in discovery:

> Mr. Cooper: You didn't give me her name.  You didn't notice me on this witness.
>
> Court: What were you going to cross her on?  If you had known her specific name, what would you cross her on?  What would you do, investigate her background?
>
> Mr.  Cooper: I might have, Your Honor.
>
> ***
>
> Court: If there's a violation of Criminal Rule 16, the Court has a variety of things that it can do... the Court is to consider the nature of the violation, the possible prejudice.
>
> For example, I could grant a continuance so that you could further investigate Miss Smith to determine if there is anything you would want to bring up about her.  I don't mean to be facetious.  But those are things that could be done.
>
> In this case, this is a... functionary... person who is simply.... going to testify... [that] this is an accurate copy of the tape, recognizing her own voice on it, and that's it.  So I'm going to find no prejudice, unless you can demonstrate some, and allow it to go forward.
>
> Mr. Cooper: Well, I would just note my objection for the record.

*Transcript,* at 242-43.  Smith then identified the audiotape of the 911 call that was made on the night

30

in question.  *Id.*, at 244.  Petitioner also argues that the trial court was biased because the trial judge stated, when addressing petitioner's motion for judgment of acquittal:

> From the circumstantial evidence and direct testimony, there was enough indication here that... your client came in and said he was going to kill both of them.

*Transcript,* at 348.  Finally, petitioner argues that the trial court exhibited bias by inquiring whether there would be any requested jury instructions on lesser included offenses.  *Transcript,* at 252-53. *See Petition*.

Petitioner's allegation of judicial bias is plainly without merit.  None of the foregoing rulings or statements by the trial court reflect bias, nor does the record indicate that the trial court was biased such as to deny petitioner a fair trial.  As noted by the state appellate court, petitioner has failed to establish the ineffective assistance under *Strickland* due to his attorney's failure to raise such issue on direct appeal.

Petitioner asserts that he was denied the effective assistance of counsel because his attorney failed to raise on appeal an issue of ineffective assistance of trial counsel due to trial counsel's detrimental closing argument, and trial counsel's failure to point out inconsistencies in the testimony of prosecution witnesses.  Specifically, petitioner complains that trial counsel failed to point out Stone's inconsistent statements as to how long it had been since she had seen petitioner prior to the night in question, whether petitioner had permitted her to use the bathroom, and whether she was treated by paramedics at the scene.  Again, this claim is without merit.

The defense argued that Stone and petitioner had an ongoing relationship at the time in question, and that on the date of the alleged offense, Stone had permitted petitioner to find her in bed

31

with another man.  Defense counsel argued that Stone had given petitioner the key to her apartment, and he had entered with her permission on the night of the alleged offense. *Transcript,* at 32-35. On cross examination, Stone admitted that she could not state with certainty the date that she had allegedly ended her relationship with petitioner. *Transcript,* at 102, 117, 127.  Through cross examination, it was established that Stone had repeatedly telephoned petitioner up until the evening of the date at issue, and after the alleged offense. *Id*., at 110-121.  Stone admitted that she had continued to call petitioner's house repeatedly, even after the alleged offense, up until she was asked by the prosecutor's office to stop. *Id*., at 133-134.  She admitted that she had, on many prior occasions, told petitioner the relationship was over, and then resumed the relationship. *Id*., at 106. She had neither changed her locks, nor asked petitioner to return her key after allegedly ending the relationship this time. *Id.*, at 108.  On cross examination, Trey, the victim's son, stated that the day before the offense, he and his mother had visited petitioner's house. *Id*., at 233.

Stone was cross examined on her inconsistent statements as to whether she had refused treatment for her alleged injuries. *Id*., at 168-173. Officer John Weeks of the Columbus Police Department was also questioned regarding whether Stone had received treatment for injuries after police responded. *Id*., at 291-292.  Additionally, in regard to her use of the bathroom on the night in question, Stone testified:

> I got up out of bed and I went in and I sat with my son.  And I was holding my son.  He was crying.  And I had to use the restroom, and I told Tim that I had to use the restroom, and I started to get up and he says, "I didn't tell you to move."  And I said, "Well, I can't sit on my son's bed and we... myself."

> So I got Trey and said, "Trey, Come on."  I got my son by his hand and we went to the bathroom.  And my son was so scared and petrified, he got in the bathtub and pulled the shower curtain closed

and sat in there while I used the restroom."

*Transcript*, at 48.  Stone had apparently previously told police that

> She didn't want to go to the bathroom, that Trey was already in the bathroom.

Id., at 89.[2]

Contrary to petitioner's allegations here, review of the record fails to reflect that trial counsel's cross examination was inadequate or unreasonable under *Strickland*.  Petitioner cannot establish prejudice under *Strickland* from any failure by counsel to cross examine petitioner regarding whether she had, or had not, gone to the bathroom.  Further, as noted by the state appellate court, the record fails to reflect that defense counsel's closing argument was detrimental to the defense.  To the contrary, defense counsel succeeded in obtaining petitioner's acquittal on charges of aggravated burglary and kidnapping.

For the foregoing reasons, and for the reasons discussed by the state appellate court, this Court likewise concludes that petitioner has failed to establish the ineffective assistance of appellate counsel under *Strickland*.  He has likewise failed to establish cause and prejudice for his procedural default of claims six and claims eight through eleven.

In claim twelve, petitioner asserts that he was denied the effective assistance of counsel because his attorney failed to raise on appeal an issue that his sentence violates the Supreme Court's decision in *Blakely v. Washington, supra*, 542 U.S. at 296.

In *Blakely,* the Supreme Court reversed a sentence imposed under the

---

[2]  The police report detailing Stone's interview with police does not appear to be a part of the record before this Court.

State of Washington's determinate sentencing scheme after finding
the trial judge had enhanced the defendant's kidnaping sentence
beyond the statutory maximum based upon his own finding, by a
preponderance of the evidence, the defendant had acted with
"deliberate cruelty." 124 S.Ct. at 2537-38. In doing so, the Supreme
Court reiterated its previous holding that "[o]ther than the fact of a
prior conviction, any fact that increases the penalty for a crime
beyond the prescribed statutory maximum must be submitted to a
jury, and proved beyond a reasonable doubt," *Apprendi v. New
Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 2362-63, 147 L.Ed.2d 435
(2000), but clarified that "the 'statutory maximum' for *Apprendi*
purposes is the maximum sentence a judge may impose *solely on the
basis of the facts reflected in the jury verdict or admitted by the
defendant." Blakely,* 124 S.Ct. at 2537 (emphasis in original). By the
time the parties filed their supplemental briefs and we held oral
argument, this Court, sitting en banc, had held the ruling in *Blakely*
did not compel the conclusion the United States Sentencing
Guidelines ("Guidelines") violated the Sixth Amendment's jury trial
guarantee. *United States v. Koch,* 383 F.3d 436, 438-43 (6th
Cir.2004) (en banc). However, since oral argument in this case a
majority of the Supreme Court has held otherwise, concluding "there
is no distinction of constitutional significance between the Federal
Sentencing Guidelines and the Washington procedures at issue in [
*Blakely* ]." *United States v. Booker,* ---U.S. ----, 125 S.Ct. 738, 749,
160 L.Ed.2d 621 (2005) (Stevens, J.). A separate majority of the
Court remedied this violation by striking those provisions of the
United States Code which made the Guidelines mandatory, 18 U.S.C.
§ 3553(b)(1), and set forth standards of review on appeal, 18 U.S.C.
§ 3742(e). *Booker,* 125 S.Ct. at 764-66 (Breyer, J.).

*United States v. Bucheit*, unpublished, 134 Fed.Appx. 842, 861 (6th Cir. May 23, 2005).  In *United*

*States v. Booker*, 543 U.S. 220 (2005), the United States Supreme Court subsequently struck the

mandatory provisions of the United States Sentencing Guidelines as unconstitutional under *Blakely.*

*Id.*, at 258-259.

The Ohio Supreme Court has similarly held that Ohio's sentencing statutes are

constitutionally prohibited under *Blakely*:

Certain aspects of Ohio's felony sentencing plan are unconstitutional

34

when measured against the Sixth Amendment principles established in *Blakely*. The reason for this is, like many state legislatures that attempted sentencing reform, the Ohio General Assembly, through its enactment of S.B. 2 in 1996, authorized narrower sentencing ranges and restricted the discretion of trial judges by *mandating* that underlying "findings" be made before increasing what seems to be a presumptive sentence. In other words, the sentence is not determined "solely on the basis of facts reflected in the jury verdict or admitted by the defendant" as *Blakely* requires. (Emphasis omitted.) Id., 542 U.S. at 303, 124 S.Ct. 2531, 159 L.Ed.2d 403.

\*\*\*

Ohio's sentencing statutes offend the constitutional principles announced in *Blakely* in four areas. As was reaffirmed by the Supreme Court in *Booker*, "Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Id.*, 543 U.S. at 244, 125 S.Ct. 738, 160 L.Ed.2d 621.

Because R.C. 2929.14(B) and (C) and 2929.19(B)(2) require judicial factfinding before imposition of a sentence greater than the maximum term authorized by a jury verdict or admission of the defendant, they are unconstitutional. Because R.C. 2929.14(E)(4) and 2929.41(A) require judicial finding of facts not proven to a jury beyond a reasonable doubt or admitted by the defendant before imposition of consecutive sentences, they are unconstitutional. Because R.C. 2929.14(D)(2)(b) and (D)(3)(b) require judicial finding of facts not proven to a jury beyond a reasonable doubt or admitted by the defendant, before repeat violent offender and major drug offender penalty enhancements are imposed, they are unconstitutional. *Apprendi,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435; *Blakely,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403.

*State v. Foster,* 2006 WL 509549 (Ohio February 27, 2006). The Ohio Supreme Court excised the unconstitutional provisions of its sentencing statutes in accordance with the Supreme Court's remedial action in *United States v. Booker*, 543 U.S. 234, 764 (2005)(severing and excising

unconstitutional provisions of United States Sentencing Guidelines rather than invalidating sentencing guidelines in their entirety), and held that any Ohio cases

> pending on direct review must be remanded to trial courts for new sentencing hearings not inconsistent with this opinion.

*Id.*

Petitioner was convicted on two counts of abduction, a third degree felony, in violation of O.R.C. §2905.02, with a firearm specification.  *See* Exhibit 2 to Return of Writ.  Under O.R.C. §2929.14(A)(3), a third degree felony is punishable by a prison term of one, two, three, four, or five years.  Petitioner was sentenced to two terms of three years incarceration for his abduction convictions, such sentences to be served concurrently, plus three years on the firearm specification, for a total of six years.  Petitioner contends that his sentence violates *Blakely* because the trial court engaged in impermissible judicial fact finding to justify imposition of more than the minimum sentence on his abduction convictions, as petitioner had not previously served a prison sentence. *See* O.R.C. §2929.14(B).[3]

─────────────────────

[3]  O.R.C. §2929.14(B) provides:

(B) Except as provided in division (C), (D)(1), (D)(2), (D)(3), (D)(5), (D)(6), or (G) of this section, in section 2907.02 of the Revised Code, or in Chapter 2925. of the Revised Code, if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless one or more of the following applies:

(1) The offender was serving a prison term at the time of the offense, or the offender previously had served a prison term.

(2) The court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by

36

Although petitioner raised this same claim in his application to reopen the appeal pursuant to Ohio Appellate Rule 26(B), *see* Exhibit 11 to Return of Writ, at 9, the state appellate court addressed his claim in terms of state law only.  Exhibit 15 to Return of Writ, *supra*.  Under such circumstances, this Court conducts an independent review of petitioner's ineffective assistance of appellate counsel claim.

> Where the state court has not addressed or resolved claims based on federal law, most courts, including this one, have held that the decision is not an "adjudication on the merits." Thus, a federal habeas court reviews such unaddressed claims *de novo. See McKenzie v. Smith,* 326 F.3d 721, 727 (6th Cir.2003) (distinguishing "no results" from no reasoning).

> Where, however, the state court disposes of a constitutional claim but fails to articulate its analysis, the rule is less clear. The Petitioner argues that because the state courts did not articulate their reasoning for denying the due process claim, the federal court should review the constitutional claims *de novo*. The Respondent argues that the state court's result remains entitled to deferential review.

> We have taken an intermediate approach-in between *de novo* review and complete deference. We have held that a federal habeas court must conduct an independent review of the record and applicable law to determine whether, under the AEDPA standard, the state court decision is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented. *Harris v. Stovall,* 212 F.3d 940, 943 (6th Cir.2000) (citing *Aycox v. Lytle,* 196 F.3d 1174, 1177-78 (10th Cir.1999)).

> The independent review, however, is not a full, de novo review of the claims. *Id.* As we held in *Harris,* the review remains deferential, because the court cannot grant relief unless the state court's result

---

the offender or others.

37

contradicts the strictures of AEDPA. *Id.*

*Howard v. Bouchard*, 405 F.3d 459, 467 (6th Cir. 2005).   Nonetheless, petitioner's claim of ineffective assistance of counsel is without merit.

Petitioner was sentenced on December 15, 2003, prior to the United States Supreme Court's June 24, 2004, decision in *Blakely*.  He filed his notice of appeal on December 31, 2003, and his appellate brief on May 17, 2004, also prior to *Blakely*.  *See Docket Sheet*, Exhibit 2 to Return of Writ.  Thereafter, on June 11, 2004, appellate counsel filed a motion to withdraw, stating:

> Appellant notified counsel in writing twice that he was "dismissing" counsel from his case.  On June 10, 2004, Appellant made a three way telephone call from Noble Correctional Institute and informed counsel that he wanted to represent himself or obtain other counsel to respond to Appellee's brief and file additional errors for the Court to review.

Exhibit 22 to Return of Writ.  On June 16, 2004, the appellate court granted counsel's motion to withdraw, and gave petitioner an extension of time until June 28, 2004, to file his reply brief. Exhibit 23 to Return of Writ.  Apparently, a reply brief was never filed.  On October 7, 2004, petitioner filed a *pro se* motion to inform the court of new authority (*i.e., Crawford v. Washington*, 541 U.S. 36 (2004)), which motion was granted.  Exhibits 24 and 25 to Return of Writ.  Thereafter, on October 13, 2004, petitioner's prior appellate counsel filed a request to again appear on petitioner's behalf for oral argument and to supplement the appellate brief with *Crawford v. Washington, supra,* stating:

> Appellant previously notified counsel in writing twice that he was "dismissing" counsel from his case.  On June 10, 2004, Appellant made a three way telephone call form prison stating that he wanted to represent himself....

> Recently, Appellant notified counsel in writing that he was unable to
> obtain private counsel to argue his case before this Court.  Appellant
> asked counsel to appear to conduct oral argument for the brief and
> supplement the argument and brief with the *Crawford* decision.
> Counsel respectfully requests this Court grant this request....

Exhibit 26 to Return of Writ.  On October 15, 2004, the appellate court denied counsel's request.

Exhibit 27 to Return of Writ.  On October 19, 2004, petitioner filed a *pro se* request for appointment

of counsel.  Exhibit 28 to Return of Writ.  Petitioner stated that he was "shocked" when he learned

that his attorney had withdrawn because counsel had not advised petitioner of his intent to withdraw.

Petitioner further stated:

> I never authorized Mr. Funkhouser to move to withdraw as my
> attorney and I do not understand how this occurred.
>
> I wrote two letters to Mr. Funkhouser questioning the contents of the
> merit brief that he filed on my behalf.  I also spoke with him on the
> telephone during which conversation he said that if I did not like the
> way he was handling the case, that I should represent myself.  I told
> him I might be better off but since I am not a lawyer, I would still
> prefer to have a licensed attorney representing me.  I then received a
> letter from Mr. Funkhouser, a copy of which is attached, indicating
> that he was not going to withdraw and that I should reconsider
> representing myself.  In this letter, Mr. Funkhouser stated, "If you
> want to dismiss me as you[r] attorney, you will need to notify the
> Court of Appeals...." I never wrote to the Court of Appeals because
> I did not want to represent myself.  The only reason that I am now
> filing this motion and making filings with this Court is because the
> Court has ordered me to represent myself.

Exhibit 28 to Return of Writ.  Petitioner stated that he had been unable to obtain new counsel.  *Id.*

> I do not want to represent myself and never did.  If I did, then I would
> have followed Mr. Funkhouser's directive and would have written to
> the Court requesting that it allow m[e] to proceed without an
> attorney.... I was unaware that if I wrote letters to my attorney
> questioning his work that he would withdraw from my case....

*Id.* On November 8, 2004, the appellate court appointed the Franklin County Public Defender as new appellate counsel on petitioner's behalf, noting that former appellate counsel's motion to withdraw did not indicate service on petitioner. Exhibit 29 to Return of Writ. On November 22, 2004, the public defender filed a motion requesting leave to file a supplemental brief on petitioner's behalf, in part, in view of *Blakely*. Exhibit 30 to Return of Writ. The state appellate court denied the public defender's request. Exhibit 31 to Return of Writ. On December 7, 2004, the appellate court dismissed petitioner's appeal. Exhibit 5 to Return of Writ.

Under such circumstances, despite that fact that petitioner's *Blakely* claim appears meritorious in view of *State v. Foster, supra,* the Court cannot conclude that either petitioner's first appointed appellate counsel, nor the public defender who was later appointed on petitioner's behalf, acted unreasonably under the first prong of *Strickland* in failing to raise such issue on appeal. Petitioner's first attorney filed his appellate brief on May 17, 2004, one month prior to *Blakely*. An attorney's failure to predict *Blakely* does not constitute the ineffective assistance of counsel. *See United States v. Burgess*, 142 Fed.Appx. 232, unpublished 2005 Fed.App. 0531N (6th Cir. June 22, 2005).

> Competence, not prescience, is what the constitution requires. *See United States v. Bradley*, 400 F.3d 459, 463 (6th Cir.2005) ("[W]here developments in the law later expand a right that a defendant has waived in a plea agreement, the change in law does not suddenly make the plea involuntary or unknowing or otherwise undo its binding nature. A valid plea agreement, after all, requires knowledge of existing rights, not clairvoyance."); *Green v. United States*, 65 F.3d 546, 551 (6th Cir.1995) (lawyer's failure to predict Sixth Circuit's approach to law did not constitute ineffective assistance of counsel); *United States v. Gonzalez-Lerma*, 71 F.3d 1537, 1542 (10th Cir.1995)("Defendant faults his former counsel not for failing to find existing law, but for failing to predict future law. We agree ... that clairvoyance is not a required attribute of effective representation.");

40

> *Nelson v. Estelle*, 642 F.2d 903, 908 (5th Cir.1981) (holding that "counsel is normally not expected to foresee future new developments in the law").

*Conley v. United States*, 2005 WL 1420843 (W.D. Mich. June 15, 2005). Additionally, petitioner's first appellate attorney filed his request to withdraw on June 11, 2004, just prior to *Blakely*, and apparently in view of his understanding that petitioner wanted to proceed *pro se* or hire another attorney. Further, the public defender who was thereafter appointed promptly requested to supplement the appeal with a *Blakely* claim, which request was denied. This Court therefore likewise concludes that the public defender's performance was not unreasonable. In sum, petitioner has failed to establish the ineffective assistance of counsel under *Strickland,* in view of the circumstances reflected by record before this Court, for failing to raise on appeal a *Blakely* claim.

Petitioner likewise has failed to establish cause for his procedural default of claim twelve.

## IV.  CLAIM ONE

In claim one, petitioner asserts that he was denied his right to confront witnesses. Specifically, petitioner refers to the following testimony:

1.  Michelle Stone's statement that she heard Ballow say "there he goes" while she stood outside her apartment after the police had arrived.  *Transcript*, at 185-86.

2.  The following testimony by police:

> Q.  And based upon what Miss Stone told you, what did you do next?
>
> ***
>
> A.  Ms. Stone indicated to me over the telephone that she had been in contact with Mr. Banks by telephone, and that he had asked her to meet him at Applebee's Restaurant on Brice Road.

41

***

With that in mind, I went to Miss Stone's apartment, and I had officers go to Mr. Banks' house at 7000 Candlish Avenue....

I went over and talked to Miss Stone in person.  And when I arrived, she indicated that she was on the phone at that time talking to Mr. Banks again on the cell phone.

***

She hung up, and she said that he's at this house....

***

working on satellite discs.  I had officers in the location of the house, and I asked them to move up closer to the house and to contain the house so if Mr. Banks was, in fact, inside, that he would not be able to get out.

I then placed the phone call to Mr. Banks from my cell phone at the number provided to me by Miss Stone, and he would not answer. Miss Stone indicated that she was not surprised that he wouldn't answer... that he had caller ID, and if he didn't recognize....

***

I placed a call to Mr. Banks, using Miss Stone's phone.  He answered.  I identified myself.  I told him we had officers outside of his residence and asked him to come to the door, and he refused....He hung up on me.

As soon as he hung up, her cell phone rang.  And, again, she stated that he was upset with her because he could tell that I had made a phone call from her phone.

42

> ***
>
> So when she hung up from talking to Mr. Banks, she said that... he knew we were outside of his house, that he could hear us knocking on the door....
>
> ***
>
> So based on the fact of what all had occurred.... I instructed the officers to continue knocking, and if he didn't answer, we would eventually force entry, which we did.

*Transcript*, at 204-211.

> A.  During the course of my interview with her, Michelle Stone had a cellular telephone on her person and it rang several times during our interview, and she explained to me that that was the defendant calling her at those times, and I instructed her to turn the phone off so we could conduct the interview.

*Id.*, at 280.

3.  Testimony by the 911 operator Charlotte Smith identifying the 911 tape, and admission of the contents of the 911 tape.  *Transcript*, at 244-247.[4]

The state appellate court denied this claim as follows:

> Appellant's first assignment of error argues the trial court erred in allowing the introduction of hearsay evidence to bolster Stone's version of the events leading to appellant's arrest. The admission or exclusion of evidence lies in the trial court's sound discretion.  *State v. Sage* (1987), 31 Ohio St.3d 173, 510 N.E.2d 343. To find an abuse of discretion, this court must determine the trial court's decision was unreasonable, arbitrary or unconscionable, and not merely an error of

---

[4]  The tape was played for the jury; however, the record before this Court does not contain a transcription of the 911 tape.

43

law or judgment. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140.

Specifically, appellant objects to:

1. Stone's testimony that she heard Ballow say "there he goes" while they stood outside the apartment building after police arrived (Tr. at 185- 187);

2. Testimony by Sergeant Jeff A. Matthias, Officer Harold Conley, and Detective John A. Weeks regarding Stone's statements to them (Tr. at 204-209, 281);

3. Testimony by 911 operator Charlotte Smith identifying the 911 tape, and the admission of the tape itself, which appellant alleges contained statements by Ballow that did not qualify as exceptions to the hearsay rule (Tr. at 244-247).

Appellant claims these admissions violated his Sixth Amendment right to confrontation. As supporting authority he directs us to the recent United States Supreme Court case of *Crawford v. Washington* (2004), 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177, in which the court rejected its previous position that an unavailable witness' out-of-court testimonial statements are admissible so long as the court finds sufficient indicia of reliability. *Crawford* now requires the exclusion of testimonial statements by unavailable witnesses unless the state establishes the witnesses are unavailable and the defense had a prior opportunity to cross-examine them.

Appellant's reliance upon *Crawford* is misplaced. The holding in *Crawford* only applies to statements that are, in fact, hearsay, and that are not subject to common-law exceptions to the hearsay rule, such as excited utterance or present sense impression. Evid.R. 801(C) defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Statements that are not intended to prove the truth of what was said are not hearsay. *State v. Davis* (1991), 62 Ohio St.3d 326, at 343, 581 N.E.2d 1362. The trial court determined, and we agree, that some of the statements to which appellant objected were not hearsay because they were not being offered for the truth of the matter asserted. The court determined the remaining objectionable statements qualified as excited utterances or

present sense impressions and, therefore, were exceptions to the hearsay rule.

For example, the purpose of Sergeant Mathias' testimony was to describe, for the jury, the events leading up to appellant's arrest at the motel. A part of that testimony included statements Stone made to Sergeant Mathias about appellant. As the court explained to the jury, Sergeant Mathias' intention in repeating what Stone told him was not to bolster Stone's credibility, but to explain Sergeant Mathias' actions on the night he arrested appellant. Such statements serve to explain police conduct and are generally admissible so long as the conduct explained is relevant, equivocal, and contemporaneous with the statements. *State v. Williams,* Franklin App. No. 02AP-730, 2003-Ohio-5204, at ¶ 48, citing *State v. Blevins* (1987), 36 Ohio App.3d 147, 521 N.E.2d 1105. Sergeant Mathias' testimony meets this test and was, therefore, admissible. Furthermore, as in *Williams,* the court gave the jury a limiting instruction not to consider the statement for the truth of the matter asserted, but as an explanation of Sergeant Mathias' conduct. That instruction cured any potential prejudice from Sergeant Mathias' statements.

Similarly admissible was testimony by Officer Conley and Detective Weeks regarding their investigation of the crime, their efforts to locate appellant, and their search of the apartment and the parking lot. All of the described conduct was relevant, equivocal, and contemporaneous with the statements made. In addition, the trial court continued to offer cautionary instructions to the jury that officers' reiteration of statements by Ballow and Stone were only being offered to show why officers did what they did. Therefore, we conclude that testimony by Sergeant Mathias, Officer Conley and Detective Weeks was not, in fact, hearsay and were properly admitted by the trial court.

Next we consider appellant's argument that Ballow's statements to the 911 operator, and his alleged statement to Stone and police officers of "there he goes," did not fall within recognized exceptions to the hearsay rule and, therefore, were inadmissible. The trial court found these statements to be either excited utterances or present sense impressions. Evid.R. 803(1) defines a present sense impression as: "A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter unless circumstances indicate lack of trustworthiness." Evid.R. 803(2) defines an excited utterance as: "A statement relating

45

> to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Ballow's statements to the 911 operator would qualify under either of these exceptions and, therefore, were properly admitted. *See State v. Marbury,* Montgomery App. No. 19226, 2004-Ohio-1817; *State v. Holloway,* Franklin App. No. 02AP-984, 2003-Ohio-3298. His alleged statement of "there he goes" would similarly qualify as a present sense impression. But even if it did not so qualify, we do not find its introduction to have been prejudicial to appellant since it was not the only, or even the most persuasive, evidence linking appellant to the alleged crimes. Because the statements to which appellant objects are either not hearsay or subject to hearsay exceptions, we find the trial court did not abuse its discretion in admitting them. Therefore, we overrule appellant's first assignment of error.

Exhibit 5 to Return of Writ.  Again, the state appellate court's findings are entitled to a presumption of correctness.  28 U.S.C. §(d), (e).  Petitioner has failed to establish that the state court's decision is so unreasonable as to justify federal habeas corpus relief.  *See Williams v. Taylor, supra*, 529 U.S. at 412-13.

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to physically confront and cross-examine adverse witnesses at all stages of the trial. *Illinois v. Allen*, 397 U.S. 337, 388 (1970).  In *Crawford v. Washington*, 124 S.Ct. 1354 (2004), the United States Supreme Court held that testimonial statements of a witness who does not appear at trial are inadmissible unless the witness was unavailable to testify and the defense had a prior opportunity for cross-examination. *Id.*, at 1366.:

> Where testimonial evidence is at issue... the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination.

The Court declined to spell out a comprehensive definition of the term "testimonial," but stated that, at a minimum, the term includes

46

> prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations. These are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed.

*Id*.

A casual remark to an acquaintance, business records, and statements made in furtherance of a conspiracy do not constitute testimonial statements subject to the strictures of the Sixth Amendment. *Id*., at 1364, 1367. "Where non-testimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law--as does *Roberts*, and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether." *Crawford v. Washington, supra*, 124 S.Ct. at 1374.

> [T]he proper inquiry in deciding whether a statement is testimonial for evidentiary purposes is "whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime." *Cromer*, 389 F.3d at 675.

*United States v. Pugh*, 405 F.3d 390, 399 (6th Cir. 2005). Additionally,

> [t]he admission of a testimonial statement in and of itself is not enough to trigger a violation of the Confrontation Clause. Instead, the statement must be used as hearsay-in other words, it must be offered for the truth of the matter asserted.

*Id.*

> Prior to *Crawford*, the admissibility of any statement--whether testimonial or not-- depended on whether the statement fell under a "firmly rooted hearsay exception or [bore] particularized guarantees of trustworthiness." *Crawford*, 541 U.S. at 60, 124 S.Ct. 1354 (citation and internal quotation marks omitted); see *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980); *Lilly v. Virginia*, 527 U.S. 116, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999) (plurality opinion). Thus, "[a]ny out-of-court statement was

47

> constitutionally admissible so long as it fell within an exception to
> the hearsay rule or, if that exception was not firmly rooted, the court
> found that the statement was likely to be reliable." *Saget*, 377 F.3d at
> 226 (citation omitted). The leading case standing for this generalized
> approach to analyzing Sixth Amendment challenges to hearsay
> evidence is *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d
> 597 (1980), which the Court frankly ridiculed in *Crawford* but did
> not quite over-rule. *See Crawford*, 541 U.S. at 61, 124 S.Ct. 1354
> (describing pre-*Crawford* confrontation clause jurisprudence as in
> "doubt" but not definitively overruled). Consequently, with respect
> to non-testimonial hearsay statements, *Roberts* and its progeny
> remain the controlling precedents. As we put it in the recent case of
> *United States v. Gibson*, "Crawford dealt only with testimonial
> statements and did not disturb the rule that nontestimonial statements
> are constitutionally admissible if they bear independent guarantees of
> trustworthiness." 409 F.3d at 338; *see also Saget*, 377 F.3d at 227
> ("*Crawford* leaves the *Roberts* approach untouched with respect to
> nontestimonial statements .... Accordingly, while the continued
> viability of *Roberts* with respect to nontestimonial statements is in
> doubt, we will assume for purposes of this opinion that its reliability
> analysis continues to apply to control nontestimonial hearsay ....").

*United States v. Franklin,* 415 F.3d 537, 546 (6th Cir. 2005).  Finally, a violation of the

Confrontation Clause is subject to harmless error review.  *Id*., at 400, citing *Jordan v. Hurley*, 397

F.3d 360, 363 (6th Cir.2005).

> Unless a constitutional error has a "substantial and injurious effect or
> influence in determining the jury's verdict," *Brecht v. Abrahamson*,
> 507 U.S. 619, 623, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (quoting
> *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 90
> L.Ed. 1557 (1946)), it will be considered harmless.

*Dorchy v. Jones*, 398 F.3d 783, 791 (6th Cir. 2005).

     For the reasons discussed by the state appellate court, this Court likewise concludes that all

of the statements referred to by petitioner were non-testimonial in nature, not offered for the truth

of the matter asserted, or constituted harmless error.

Claim one is without merit.

## V.  CLAIM TWO

In claim two, petitioner asserts that the evidence is constitutionally insufficient to sustain his

convictions on abduction.  The state appellate court rejected this claim in relevant part as follows:

> [A]ppellant specifically asserts that Stone inconsistently testified
> regarding both her phone calls to appellant and events she observed
> while standing outside her apartment with police. The transcript
> reveals that appellant introduced Stone's cell phone records indicating
> a large volume of calls to appellant's phone. Stone admitted she
> frequently phoned appellant both before and after the incident;
> however, Stone explained that the phone calls before the incident
> were attempts to locate appellant, to tell him she wanted to break up,
> and to attempt to obtain an explanation from him regarding his
> behavior toward her. She also explained that her phone calls after the
> incident were an attempt to assist police in locating and apprehending
> appellant. She additionally explained that not every call was
> answered, even though her cell phone service provider had recorded
> that the number had been dialed. The theory of appellant's defense
> was apparently that: the phone calls were evidence that he and Stone
> were still romantically involved; his entry to her apartment, using
> the key she had given him, was with Stone's permission; Stone intended
> that he discover her with Ballow; and Stone lied about the events of
> that night in order to stage a dramatic break up using law
> enforcement officers. However, any inconsistencies in Stone's
> statements about the phone calls went to Stone's credibility, not to the
> manifest weight of the evidence. Regardless of the content or purpose
> of Stone's calls to appellant before or after the incident, the jury had
> to decide whether to believe Stone's account of the events of that
> night.
>
> Similarly, Stone's testimony regarding events occurring after
> appellant released her and her son from the apartment, even if
> inconsistent, would not merit a reversal on manifest weight grounds.
> Stone's testimony suggested that, after she left her apartment and was
> standing with Ballow and police outside the building, she was still
> upset about events that occurred in her apartment, and that she
> remained frightened because appellant was not yet in police custody.
> Given this scenario, the jury could attribute inconsistencies in her

49

account of events to her distress, and not to an intent to fabricate a lie in order to obtain appellant's arrest.

Appellant also argues that the state failed to prove abduction because it did not prove either that appellant used force or that Ballow was abducted. R.C. 2905.02 prohibits any person, without privilege, from knowingly removing another person from a place or restraining the liberty of another, by force or threat, under circumstances that create a risk of physical harm to the victim or place the other person in fear. Stone's testimony, found credible by the jury, was that appellant held her and Ballow at gunpoint. This is force, regardless of whether appellant eventually allowed Stone and her son to leave their apartment. Appellant suggests that, unless Stone, Ballow or Trey sustained bodily harm, the state did not prove force. The definition of force in R.C. 2905.02, however, permits conviction where the "force or threat" is proven. Clearly, holding someone at gunpoint could be perceived to be a "force or threat." Moreover, Stone also testified that appellant struck her in the head and grabbed her arm, which swelled and required medical attention and time off work, thus, the state proved force because appellant actually did injure Stone. Finally, evidence established that both Ballow and Trey were present when appellant injured and threatened Stone; thus, the jury would have been justified in believing the threat of force extended to Ballow and Trey as well.

The absence of Ballow as a witness at trial is also not relevant to the manifest weight question. As this court stated in *State v. Martin*, Franklin App. No. 02AP-33, 2002-Ohio-4769, at ¶ 35:

* * * [Abduction] requires proof that the accused knowingly restrained the liberty of another person by force or threat under circumstances that create a risk of physical harm to the victim or place the other person in fear. The omission of the name of the victim from an indictment does not invalidate it as a legally sufficient charging instrument. * * * Similarly, proof of the identity of the alleged victim is not required when it is not an essential element of the offense. (Emphasis sic.)

In this case, both Stone and Trey testified that Ballow was in the apartment with them when appellant first entered the scene. Stone also testified that Ballow was outside with police when she exited the

> apartment. Stone identified Ballow's voice on the 911 tape, and the 911 operator verified the contents of the tape. Ballow's statements on the tape, admitted as excited utterance or present sense impression exceptions to the hearsay rule, indicated he was in the apartment and that appellant had held him at gunpoint. In addition, Officer Conley testified that a man named Ballow had led him to the apartment that night. All of this evidence, if believed by the jury, weighed on the side of conviction. Based upon these considerations, we overrule appellant's second assignment of error.

Exhibit 5 to Return of Writ.  Again, petitioner has failed to establish that the state appellate court's decision is so unreasonable as to warrant federal habeas corpus relief.  28 U.S.C. §2254(d), (e); *Williams v. Taylor, supra.*

To the extent that petitioner asserts here that his convictions are against the manifest weight of the evidence, such claim is not appropriate for federal habeas corpus review.  The Due Process Clause does not provide relief for defendants whose convictions are against the manifest weight of the evidence, but only for those who have been convicted without proof sufficient to allow a rational trier of fact to find guilt beyond a reasonable doubt.  *Walker v. Engle*, 703 F.2d 959, 969 (6th Cir.), *cert. denied*, 464 U.S. 962 (1983).  In the context of a claim alleging a violation of due process, "sufficiency of the evidence" refers to the due process requirement that there be enough evidence introduced in favor of the prosecution for a rational trier of fact to find each element of the crime beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  In reviewing a sufficiency of the evidence claim, a federal habeas court must defer to the trier of fact with respect to issues of conflicting testimony, weight of the evidence and the credibility of the witnesses. *Jackson*, 443 U.S. at 319; *Walker*, 703 F.2d at 969.

However, under Ohio law, a claim that a verdict was against the manifest weight of the evidence – as opposed to one based upon insufficient evidence – requires the appellate court to act

51

as a "thirteenth juror" and review the entire record, weigh the evidence and consider the credibility of witnesses to determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175 (1983); *cf. Tibbs v. Florida*, 457 U.S. 31 (1982).  Since a federal habeas court does not function as an additional state appellate court, vested with the authority to conduct such an exhaustive review, petitioner's claim that his convictions are against the manifest weight of the evidence cannot be considered by this Court.

However, before a criminal defendant can be convicted consistent with the United States Constitution, there must be sufficient evidence to justify a reasonable trier of fact to find guilt beyond a reasonable doubt.  *Jackson v. Virginia*, *supra*, 443 U.S. at 319.  To determine whether the evidence was sufficient to support a conviction, this Court must view the evidence in the light most favorable to the prosecution.  *Wright v. West*, 505 U.S. 277, 296 (1992)(citing *Jackson,* at 319).  The prosecution is not affirmatively required to "rule out every hypothesis except that of guilt."  *Id*. (quoting *Jackson*, at 326).  "[A] reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'"  *Id*. (quoting *Jackson*, at 326).  For example the trier of fact is entitled to disbelieve a defendant's uncorroborated and confused testimony, and even to discount a defendant's credibility on account of a prior felony conviction.  *Id*.

Upon review of the record this Court agrees with the conclusion of the state appellate court that, when viewing all of the evidence in the light most favorable to the prosecution, *see Jackson, supra*, the evidence was sufficient to sustain petitioner's convictions.

Claim two is without merit.

## VI.  CLAIM FOUR

In claim four, petitioner asserts that he was denied the effective assistance of counsel because his attorney failed to call Detective McKee to impeach Trey Horton's trial testimony that he saw a gun.  McKee's interview report of Trey indicates:

> When asked, [Trey] stated that he did not see a handgun.

*See* Exhibit 19 to Return of Writ. At trial, Trey stated:

> ... I saw Tim in the hallway.
>
> Q.  Did Tim have anything in his hands?
>
> A.  I didn't see anything.
>
> ***
>
> ... And then I saw the gun in (petitioner's) lap.

*Transcript*, 224-225.  On cross examination, Trey stated:

> Q.  Now, after this happened... Do you recall talking to a police officer...?
>
> A.  Uh-huh.
>
> Q.  And you told him everything that you saw that night, right?
>
> A.  Uh-huh.

Q.  Do you recall telling that officer that you did not see a gun that night?

A.  I told him I did.

Q.  Okay.  So if he wrote something different down, do you think he would have been mistaken?

A.  Probably.  I don't know.

Q.  You don't think he would be mistaken?

A.  (Shakes head).

Q.  But you think you saw a gun that night?

A.  Yes.

***

Q. [The gun] wasn't pointed at anybody, was it?

A.  Huh-uh.

Q. ... the gun was laying in his lap?

A.  Uh-huh.

*Id.*, at 234-235.

The state appellate court rejected petitioner's claim as follows:

Appellant's fourth assignment of error charges that his trial counsel

54

provided ineffective assistance. The two-prong test for determining
ineffective assistance is found in Strickland v. Washington (1984),
466 U.S. 668, at 687, 104 S.Ct. 2052, 80 L.Ed.2d 674, in which the
court held:

 * * * First, the defendant must show that counsel's performance was
deficient. This requires showing that counsel made errors so serious
that counsel was not functioning as the "counsel" guaranteed the
defendant by the Sixth Amendment. Second, the defendant must
show that the deficient performance prejudiced the defense. This
requires showing that counsel's errors were so serious as to deprive
the defendant of a fair trial, a trial whose result is reliable. * * *

In support of this argument, appellant focuses upon direct
examination testimony by Stone's son, Trey. According to appellant,
his counsel should have objected when the prosecution asked leading
questions regarding whether Trey actually saw a gun in appellant's
hand. Apparently, there was a discrepancy between what Trey told an
investigating officer and what Trey testified to at trial. However, our
test is whether counsel's error, if it was in fact an error and not simply
trial strategy, was so serious that he was not functioning as counsel
and appellant was deprived of a fair trial. In this case, even if counsel
should have objected, and even if the trial court should have
sustained such an objection, the remaining testimony by other
witnesses connecting appellant to the gun and supporting Stone's
version of events, if believed, weighed in favor of appellant's
conviction. Thus, we cannot say any deficiency by appellant's
counsel with regard to Trey's testimony deprived appellant of a fair
trial. We therefore overrule appellant's fourth assignment of error.

Exhibit 5 to Return of Writ.  Upon review of the entire record, the Court concludes that petitioner

has failed to establish prejudice from counsel's failure to call McKee as a witness to establish that

Trey had previously stated that he did not see a gun.  Such issue was sufficiently explored on cross

examination of Trey.  Further, Trey's testimony that petitioner had a gun was merely cumulative to

that of Michelle Stone.

Claim four is without merit.

55

## VII.  CLAIM FIVE

In claim five, petitioner asserts that he was denied counsel on direct appeal because the state appellate court granted appellate counsel's motion to withdraw, and subsequently denied the public defender's request for an extension of time to file a supplemental appellate brief.  This claim was first raised on appeal to the Ohio Supreme Court, and was summarily dismissed.  This Court therefore again conducts a *de novo* review of petitioner's claim.  *Howard v. Bouchard, supra*, 405 F.3d at 467.  However, the claim is plainly without merit.

Contrary to petitioner's allegations here, the record fails to reflect that he was without counsel during any critical stage of the appeal.  Petitioner complains that the state appellate court abused its discretion in refusing to grant an extension of time for the public defender to file a supplemental brief; however, such allegation, even if true, did not constitute a denial of petitioner's right to appeal.

Claim five is without merit.

## VIII.  CLAIM SEVEN

In claim seven, petitioner asserts that he was denied a fair trial because the prosecutor failed to disclose exculpatory evidence, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to turn over Detective McKee's report detailing his interview with Trey Drew-Horton until mid-trial.  Petitioner also asserts that the prosecutor improperly failed to disclose until mid-trial a police summary of Michelle Stone's statement to police.  Petitioner's allegations in claim seven were raised in his April 29, 2005, amended petition for post conviction relief, which action apparently is still

pending in the state trial court.[5]

The state appellate court made the following relevant findings regarding this claim in its dismissal of petitioner's application to reopen the appeal pursuant to Ohio Appellate Rule 26(B), wherein petitioner asserted that he was denied the effective assistance of appellate counsel due to his attorney's failure to raise an issue regarding the prosecutor's failure to disclose a summary of Stone's statements to police:

> [A]ppellant complains that the state failed to provide exculpatory information in violation of Crim.R. 16(B)(1)(g). In the present case, an informational summary was provided to defense counsel at trial. Pursuant to *Brady v. Maryland* (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, the state is required to disclose material evidence to defense counsel. Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. The possibility that certain undisclosed information might have been helpful to the defense or might have affected the outcome of the trial does not satisfy the requirement that the evidence be material.
>
> The record shows that defense counsel characterized the summary as similar to a summary provided to him earlier. Furthermore, appellant has not shown that the evidence was exculpatory or that there was a reasonable probability that the result of the proceeding would have been different had that information been disclosed.

Exhibit 15 to Return of Writ.  Again, the state appellate court's decision is entitled to a presumption of correctness.  28 U.S.C. §2254(d), (e); *Williams v. Taylor, supra*.  Again, petitioner has failed to

---

[5]  As previously discussed, on March 9, 2006, the Court denied respondent's request for a stay of proceedings pending exhaustion of state court proceedings on petitioner's petition for post conviction relief.  *See Turner v. Bagley*, 401 F.3d 718, 724-25 (6th Cir. 2005)(inordinate delay in adjudication of claims by the state courts justifies excusing the exhaustion requirement); Doc. No. 13.

establish any reason to justify federal habeas corpus relief.

In *Brady v. Maryland, supra*, the United States Supreme Court held that:

> the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.

*Brady v. Maryland*, *supra*, 373 U.S. at 86.  Evidence is material

> If there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.

*United States v. Bagley*, 473 U.S. 667, 682 (1985).

> [T]here is never a real "*Brady* violation" unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict.

*Strickler v. Greene,* 527 U.S. 263, 281 (1999).  "Impeachment evidence, as well as exculpatory evidence, falls within the *Brady* rule."  *O'Guinn v. Dutton*, 88 F.3d 1409, 1418 (6th Cir. 1996), citing *United States v. Bagley, supra*.  "In the absence of prejudice, even assuming a violation of *Brady*, reversal is not required."  *United States v. Jones*, 766 F.2d 994, 998 n.1 (6th Cir. 1985), citing *United States v. Campagnuolo*, 592 F.2d 852, 861 & n. 9 (5th Cir.1979).  Further,

> [T]he government's failure to disclose potentially exculpatory information does not violate *Brady* "where a defendant 'knew or should have known the essential facts permitting him to take advantage of any exculpatory information' or where the evidence is available to defendant from another source." *United States v. Clark*, 928 F.2d 733, 738 (6th Cir.1991) (quoting *United States v. Grossman*, 843 F.2d 78, 85 (2d Cir.1988)). *See also Todd*, 920 F.2d at 405.

*United States v. Cottage,* 307 F.3d 494, 499 (6th Cir. 2002).

For the reasons discussed, *supra,* petitioner has failed to establish that he was prejudiced by the prosecutor's failure to earlier provide McKee's report detailing his interview of Trey Drew-Horton.  Despite trial counsel's affidavit stating that it was "too late" for him to subpoena Detective McKee and that he had "no opportunity" to establish that Trey had told police he did not see a gun, the record reflects that trial counsel was able to cross examine Trey on this issue.  Further, this Court was unable to locate any indication in the trial transcript that trial counsel wanted to call McKee as a witness, but was unable to do so.  Additionally, Trey's testimony that petitioner had a gun was merely cumulative to that of Michelle Stone.

Similarly, petitioner has failed to establish that any undisclosed police summary of Stone's statement to police was either material or exculpatory within the meaning of *Brady*.  The record reflects:

> Mr. Cooper [defense counsel]: Your Honor, what I've discovered today is that this officer has a document entitled preliminary progress, which is a detailed recitation of Michelle Stone's recitation of the events... similar to the one identified previously as... informational summary two, which was provided to me.... This document was not provided to me... which we feel could have been beneficial to us in our cross-examination of Michelle Stone after she had testified.

*Transcript,* at 289.  Nothing in the record before this Court reflects that the report referred to contained any material exculpatory information, or that the report was not merely duplicative to other police reports summarizing Stone's statement to police that had already been provided.

Claim seven is without merit.

## IX.

For all of the foregoing reasons, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

If any party objects to this *Report and Recommendation*, that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation* *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation*.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


                                        /s/ Terence P. Kemp
                                        United States Magistrate Judge